IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT WEBBER.

      Plaintiff,

      v.                                              Case No. 15-CV-478 WJ/LAM

THE BOARD OF COUNTY COMMISSIONERS
FOR CURRY COUNTY, New Mexico,
a political sub-division of The State of New Mexico,
TORI SANDOVAL, in her official capacity
as Administrator of the Curry County Detention Center,
and individually, JONATHAN KING, individually

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CONSTITUTIONAL CLAIMS
and
DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER STATE LAW CLAIMS**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment on Remaining Constitutional Claims on the Basis of Qualified Immunity, filed September 15, 2016 **(Doc. 47)**. Having reviewed the relevant pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is GRANTED.

### BACKGROUND

At the time of the underlying incidents, Plaintiff was an inmate in the segregation unit (or "solitary confinement") at the Curry County Adult Detention Center ("CCDC"). Plaintiff asserts that he had been placed in the segregation unit as punishment for objecting to the water being turned off in Pod Four for "weeks at a time." Compl., ¶14. On March 26, 2015, Plaintiff extended his left arm out of the food port of the cell door with a cup in his hand and requested

some juice from Jonathan King, a corrections officer at the CCDC.  Defendant King refused to get Plaintiff juice, and shut the food port door forcibly by hand and then by forcibly kicking it twice while Plaintiff's arm was still in the door.  Plaintiff alleges that he suffered severe pain and trauma to the left arm as a result of Defendant King's conduct.   Plaintiff filed an internal grievance about the incident on March 26th, 2015, which he claims was ignored.  Compl., ¶19.

Plaintiff alleges that his request for immediate medical treatment was also ignored and that his injuries were left untreated.  He states that Defendant Sandoval, CCDC's administrator, was personally present when Plaintiff was interviewed by the Curry County Sheriff's office regarding the incident and that she was personally aware of the facts surrounding the incident but did nothing to have Plaintiff properly treated even after March 30th, 2015.  Compl, ¶¶19-21.  Plaintiff requested that Defendant Sandoval provide ice packs for his arm. Instead, he was given a medical release form to fill out.  He made numerous medical requests and was finally given five days of Tylenol for his injuries. Compl., ¶21.  Defendant King was terminated by the county for excessive use of force as a result of the incident.  The complaint also states that King was charged with simple battery and "given an unusually light sentence of a conditional discharge and 182 days of unsupervised probation. . . with the knowledge and consent of Tori Sandoval." Compl., ¶¶23-24.

The complaint alleges claims of municipal liability against the county in Counts I, II and III based on a custom or policy of failing to train and supervise the detention center's correctional officers.  Count IV alleges a violation of procedural due process based on Plaintiff's placement in solitary confinement.  There are two "Count V's": one alleging aggravated battery against Defendant King and the other alleging aggravated assault against King (hereinafter,

"Count V(a)" and "Count V(b)" respectively). Count VI asserts state tort claims against the Curry County Board of County Commissioners ("County").

The Court recently granted Defendants' motion to dismiss as to Count I, Count II and part of Count III. Count I was dismissed because Plaintiff did not allege any personal or direct involvement by Defendant Sandoval against Plaintiff concerning the violation of a constitutional right. Doc. 37 at 6-7. Count II was also dismissed because while Plaintiff asserted the existence of a "custom or policy" that violated his Eighth Amendment rights, he failed to plead any claim against Defendant Sandoval or any other individual with facts showing a connection between those specific facts and the alleged violation of Plaintiff's constitutional rights. Doc. 37 at 8.[1] The Court dismissed Count III because while Plaintiff asserted a municipal liability claim against the county for inadequate medical care, he failed to present any factual allegations anywhere in the complaint alleging that any individual including Defendant Sandoval had denied Plaintiff adequate medical care. Thus, to the extent that Count III was premised on a denial of adequate medical care, it was dismissed. As with Counts I and II, the Court noted that "there can be no municipal liability claim without an underlying constitutional claim." *See DeAnzona v. City and County of Denver,* 222 F.3d 1229, 1236 (10th Cir. 2000) (plaintiff must show underlying constitutional violation to establish a *Monell* claim).

Defendants seek dismissal of what remains of Counts III and IV, which assert due process deprivations. In these counts, Plaintiff asserts that he was improperly placed in segregation for complaining about non-potable water, did not have access to the ordinary services provided to inmates in jail, and was not given a "meaningful classification review."

---

[1] In its decision, the Court declined to afford a liberal construction to the complaint since Plaintiff is represented by counsel. *See* Doc. 37 at 7 ("It is not the Court's responsibility to parse Plaintiff's general collection of facts into discrete claims and because Plaintiff is represented by counsel, he is not entitled, and will not be afforded, a liberal construction of his complaint.") (citing cases).

Specifically, the part of Count III which is not directed to alleged inadequate medical care states that Defendants have "carried on a policy of using segregation as punishment for inmates complaining of systemic failure in the detention center including lack of potable water. Compl., ¶47. Count IV asserts a due process deprivation based on Plaintiff's placement in solitary confinement without either a classification review or a hearing. Compl., ¶¶ 49-55.

## I.     Undisputed Facts[2]

### A.     Defendants' Facts 2 through 9

Plaintiff contends that the exhibits supporting Defendants' Facts 2 through 9 are not properly before the Court, and filed a Motion to Strike those exhibits. *See* Doc. 49. The Court denied that motion and overruled Plaintiff's objections. Doc. 61. Plaintiff has provided no alternate reason as to why this Court should not consider Facts 2 through 9 in the event the Court denied his motion to strike, and the Court therefore deems Defendants' Facts 2 through 9 as undisputed, and which are as follows:

Plaintiff was incarcerated at CCDC from May 4, 2014 until approximately June 10, 2015, when he was transferred to a detention center in Carlsbad, New Mexico. Upon his booking on May 4, 2014, Plaintiff received a classification assessment and was placed in general population.

On May 11, 2014, Plaintiff engaged in an altercation with another inmate and an arrest warrant was issued. Plaintiff was convicted of battery on May 29, 2014 stemming from this incident.

On May 29, 2014, Plaintiff requested a transfer from POD 4 due to conflicts with inmates. Two days later, he was again reclassified and transferred to the segregation pod due to

---

[2] The Court omits references for the exhibits which support the facts, since they are available in the pleadings. The facts as presented here are undisputed unless otherwise noted.

4

conflicts with two inmates, Brandon Wells and Terrell Smoller. Plaintiff remained in segregation for less than two weeks.

On July 4, 2014, Plaintiff was involved in another incident when he spit on an inmate.

On August 26, 2014, he was involved in misconduct while he was a kitchen trustee.

On February 20, 2015, Plaintiff was involved in another incident when he damaged a detention center window while he was a trustee.

On March 7, 2015, Plaintiff engaged in a physical fight with another inmate. He was moved to segregation. Plaintiff was convicted of battery on May 1, 2015 as a result of this incident.

Defendants' Facts 2 through 9 are accepted by the Court as undisputed.

B.      Defendants' Facts 11 through 15

In responding to Defendants' Facts 11 through 15, Plaintiff presents two and a half pages of facts enumerated as (3)(i) to (xvi), without providing any correlation to Defendants' Facts 11 through 15. This makes it impossible to know exactly which facts Plaintiff disputes, and what facts he offers to challenge them. This Court's local rules require that:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.

D.N.M.LR-56.1(b). Under this rule, where a plaintiff has failed to specifically controvert a defendant's facts, the Court may consider those facts to be undisputed. *Id.* Defendants have taken the time and effort to reply to each of Plaintiff's unreferenced facts in (3)(i) to (xvi), and so the Court will consider these facts as responses to Defendants' facts for purposes of this motion.

       1.      *Defendants' Facts 11 through 15*

Defendants' Facts 11 through 15, which were not disputed by Plaintiff, state as follows:

In early May 2015, Plaintiff was housed with other inmates. The toilet in his cell worked, but the sink did not work for unknown reasons. The sink problem lasted a month or less. Plaintiff filed a grievance which was ultimately resolved when he was transferred to a different cell.

Plaintiff was rescreened when he requested classification rescreenings "once or twice" while he was incarcerated at CCDC. Ex. A (Pltff's Dep.) at 59-60.

Plaintiff flooded his cell while at CCDC and a privilege, most likely canteen privilege, was suspended for a time. Ex. A at 34:9-35:18 ("I think they took canteen from me").

Plaintiff would periodically get together with other inmates to orchestrate a ruckus so he could be transferred. Ex. A at 54:14-55:6.

When Plaintiff was in segregation at CCDC, he still received mail, meals and commissary. The only difference between segregation and general population is access to TV and association with other inmates. Ex. A at 47:9-48:22.

Plaintiff did not care whether he was in general population or segregation. Ex. A at 49:1-3.

    2.    *Plaintiff's "responses" to Defendants' facts.*

Plaintiff presents sixteen "responses" of fact for the purpose of disputing Defendants' facts 11, 12, 13, 14 and 15. As mentioned above, Plaintiff does not specify which response disputes which of Defendants' facts, but Defendants nonetheless reply to each of Plaintiff's responsive facts.

The bulk of Plaintiff's responsive facts, from (3)(v) to (3)(xi), describe the assault and battery from the food port door incident. Plaintiff contends that he filed a complaint about the

6

incident involving Jonathan King and that the County falsified evidence about the incident. The Court agrees with Defendants that there is no support for this statement. Plaintiff points to an Incident Report in Exhibit 2 where a Sergeant Montano stated that King's actions "were not intentional" and were "just an accidental reaction to the verbal abuse (Nigger)." Doc. 52 at 4. In light of the way King's conduct was handled by the County, this exhibit does not suggest a "cover up" by the County.

Plaintiff also includes several facts regarding what happened to Jonathan King after the food port incident. King was placed on administrative leave and was found to have violated County policy regarding use of force. Exs. 5, 6, 7. He then resigned in lieu of proceeding with an administrative hearing, and was charged with battery on Plaintiff and received a "conditional discharge." Exs. 7, 9 & 10. However, none of the facts relating to the assault and battery from the food port incident is relevant to the remaining due process claims, so these facts do not offer any material disputes regarding any of Defendant's facts 11 to 15.

Plaintiff provides some background facts for his placement in segregation in "additional" facts (3)(i) to (3)(iv). Plaintiff states, through his deposition testimony, that he has been diagnosed with bipolar disorder, and suffers from ODD (Oppositional Defiant Disorder) and ADHD (attention deficit/hyperactivity disorder), depression and anxiety. The Court agrees with Defendant that Plaintiff's diagnoses are irrelevant and immaterial to the issues in this lawsuit. First, the Court has dismissed Plaintiff's "failure to provide medical care" claims. Doc. 37 at 5. Second, Plaintiff cannot use self-reported diagnoses to support a failure to provide psychological treatment claim because Plaintiff has admitted that (1) he has taken no prescription medication for his mental health issues since he turned eighteen years old; (2) the only mental health counseling he has received happened was while he was incarcerated at CCDC; and (3) he has not

seen any mental health counselor in any other jail or prison he has been in since leaving CCDC. Ex. N (Webber Dep.) at 78:2-15; 79:1-17.

In responsive fact (3)(ii), Plaintiff states that he was placed in lock-down "in retaliation" for peeling off a piece of old tin in the kitchen that was "interfering" with his job as a kitchen trustee. Ex. 1 at 7:15-19. Defendants do not disagree that Plaintiff was placed in lock-down, but they dispute Plaintiff's characterization that he was placed in lock down due to retaliation, explaining that Plaintiff had removed the window tint to allow inmates to view the hallway area, and repair of the tint cost about $200. Doc. 47, Ex. J. Further, in claiming that Plaintiff suffered retaliation, Plaintiff states a legal conclusion which is not appropriate for summary judgment. Moreover, Plaintiff fails to provide even a scintilla of factual evidence to suggest that retaliation had any role in his placement in segregation.

In responsive fact(3)(iii), Plaintiff states that he was placed in segregation after the water was turned off in his cell. Defendants do not dispute this, but note that the movement to segregation resolved the water issue according to Plaintiff's own testimony, since the sink in that unit was operable. Doc. 47, Ex. A at 31:19-22. In response to Plaintiff's claim that the move to segregation was punitive, Defendants also point out that Plaintiff stated he did not have a preference for general population or segregation, and that the only difference between the two was the availability of television and access to other inmates. Ex. A at 38:11-25, 48-49.

Plaintiff contends that complaints about the water being turned off in the sink were ignored and thrown away, and argues that an inmate's internal grievance should be acted upon and not ignored by CCDC. Pltff's Resp. Facts (3)(iv) & (xvi). However, in the reply, Defendants point to deposition testimony where Plaintiff stated that his grievance to the County

8

Manager concerning the water issue was resolved in less than a month. Ex. A at 23:8-24-24:11; 31:11-24;38:11-25; 49:1-3.

Plaintiff's responsive facts (3)(xii)–(xv) concern allegations of conditions of confinement and those pertaining to segregation. Plaintiff states that segregation cells and the facilities at CCDC are not designed to house inmates suffering from serious mental disorders including bi-polar disorder, and the facilities should not be used to house inmates suffering from serious mental disorders because of these problems. These facts do not offer any material disputes because, as the Court has already explained, any "failure to provide medical care" claims have been dismissed. *See* Doc. 37 at 5. Also, as Defendants correctly observe, Plaintiff's "facts" concerning CCDC's alleged deficiencies are all taken from an affidavit of Gerry Billy who was a former CCDC detention facility administrator who left CCDC over a year before Plaintiff was incarcerated there. Doc. 52-11 (Ex. 11). The Court agrees with Defendants that Mr. Billy's affidavit is immaterial because it does not pertain to the relevant time period and is not based on personal knowledge. Mr. Billy claims his knowledge stems from "conversation with various individuals employed at the CCDC" (but fails to identify these individuals or what was said) and "through in person inspection" (without describing the extent and nature of this inspection).

These responsive facts are flawed for another reason. In his affidavit, Mr. Billy offers his opinion about CCDC's shortcomings in housing inmates with serious mental disorders "based on my own personal training, knowledge, and experience." *Id.,* ¶4. However, Mr. Billy's affidavit is an inadmissible expert opinion because Mr. Billy was never identified as an expert. This is the first mention of Mr. Billy as an expert in this lawsuit. There has been no expert report, and no disclosure of Mr. Billy as an expert either in Plaintiff's initial disclosures, in the Joint Status Report or the Provisional Discovery Plan. Mr. Billy was never identified as someone who will

testify concerning jail conditions, inmate mental health and grievance procedures, nor is there anything in the pleadings in this case that even remotely suggest that Mr. Billy is qualified or experienced to provide such opinions. A summary judgment affidavit may not contain expert testimony unless the affiant has first been designated an expert witness under Fed. R. Civ. P. 26(a)(2). *Parker v. Cent. Kan. Med. Ctr.*, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001), aff'd, 57 Fed. Appx. 401, 404 (10th Cir. 2003). Plaintiff's counsel apparently decided to take a detour around the Federal Rules of Civil Procedure but to no avail, as the Court will not tolerate blatant disregard of the Federal Rules of Civil Procedure governing the use of proposed expert witness testimony. Accordingly, Mr. Billy's affidavit will not be considered by the Court.

## II.     Legal Standard

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014). The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. The second asks whether the right in question was 'clearly established' at the time of the violation." *Id*. at 1865–66 (citations, internal quotation marks and alterations omitted).[3]

Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to show that the law and facts at issue establish that qualified immunity does not apply.

---

[3] The Supreme Court has held that the federal district and appellate courts have discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case. *Pearson,* 555 U.S. at 231.

*Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994).  The plaintiff must 'come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.'" *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991) (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)). This is a "heavy, two-part burden" that must be met by a plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).  If the plaintiff does not meet this heavy burden, the government official 'is properly spared the burden and expense of proceeding any further," and should be granted summary judgment.  *Dixon*, at 1460 (citation omitted). If, however, the plaintiff demonstrates both a constitutional violation and a clearly established right to the court, then the defendant assumes the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity.  *Id*. (citation omitted).

## DISCUSSION

In the due process claims asserted in Counts III and IV, Plaintiff asserts two areas of violations.  Plaintiff first alleges that he was placed in segregation arbitrarily and for long periods because he complained about the lack of potable water in POD 4, and that he was not given any meaningful classification review thereafter.   In his pleadings, Plaintiff also contends that inmate's grievances are ignored at CCDC, *see* Doc. 52 at 5 & 9, but this issue was not alleged in the complaint.  Because Plaintiff is represented by counsel, he is not entitled to a liberal construction of his complaint to include claims that are raised for the first time in the pleadings and the Court may thus consider any facts surrounding the grievance issue to be immaterial.  However, the Court has decided to give the issue enough attention to point out the deficiencies in the claim in order to dispose of it on the merits.

The Supreme Court has held that only such prison conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life may create a liberty interest protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995). The Tenth Circuit, applying *Sandin* to administrative segregation challenges, has routinely held that prisoners have no liberty interest in remaining free from such placement. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406-07 (10th Cir.1996) (confinement in administrative segregation does not cause an atypical, significant deprivation); *Talley v. Hesse,* 91 F.3d 1411, 1413 (10th Cir. 1996) (placement in administrative segregation does not give rise to a liberty interest). The Tenth Circuit has identified four factors to consider that, while not dispositive, may be relevant to determining whether placement in segregation implicates a constitutional liberty interest. *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1138 (D. Colo. 2010). These include, (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of the confinement; and (4) whether the placement is indeterminate. *Id*. citing *DiMarco v. Wyoming Dep't of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).[4]

I. **Segregation and Reclassification**

---

[4] Plaintiff's counsel alleges Count IV as a due process claim, but conditions of confinement claims alleged by inmates are properly brought under the Eighth Amendment. *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir. 1988) (wanton or obdurate disregard or deliberate indifference to prisoner's rights to life as a condition of confinement is a substantive constitutional deprivation whether it falls under the due process clause or the Eighth Amendment); *County of Sacramento*, 118 S.Ct. 1708, 1715 (1998) (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989) (if covered by a specific constitutional provision, claim must be analyzed under the standard appropriate to that specific provision); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (claims concerning conditions of confinement remain bounded by the Eighth Amendment, the "explicit textual source of constitutional protection in the prison context").

Plaintiff's segregation claim has several parts: that Plaintiff was (1) placed in segregation for long periods; (2) for complaining about lack of potable water in POD 4; (3) without any meaningful classification thereafter.  Defendants do not dispute that Plaintiff was placed in segregation after he complained about the inoperable sink in his cell, but they contend that this placement essentially resolved the water issue, as Plaintiff was moved to a cell with water.  Also, by his own admissions, Plaintiff did not have a preference for general population or segregation and viewed the only difference between segregation and general population was television and access to other inmates:

> Q: Did you like to be in cell block eight [segregation] versus general population?
> A: It didn't matter to me.  Time is time.
>     . . .
> Q: I just wanted to know if there's a difference between segregation and isolation?
>
> A. No.

Ex. A at 49:1-11.  Plaintiff can hardly claim that he was moved to segregation as an unduly punitive measure, in view of his own perception of segregation.  Also, placement in segregation does not violate due process when it serves a legitimate penological interest, and the undisputed facts demonstrate that Plaintiff's transfer to segregation was either for his own protection from other inmates with whom he had conflicts or because Plaintiff was involved in some kind of misconduct.  Nor was the placement either extreme or indeterminate.  While Plaintiff claims he was placed in segregation for "long periods" of time, he offers absolutely no facts to back up this claim.  Under Defendant's undisputed version of the facts, the longest Plaintiff remained in segregation was two weeks.  The only "evidence" Plaintiff offers as a basis for his segregation claim is in the form of Mr. Billy's affidavit, which charges that segregation cells at CCDC are not suitable for inmates suffering from serious mental disorders.  Ex. 11.  For reasons given

above, the Court is discounting Mr. Billy's affidavit in its entirety. As a result, there are no material facts to dispute those presented by Defendants which indicate that Plaintiff's placement in segregation was not arbitrary and did not violate Plaintiff's due process rights.

Plaintiff's claim that he did not receive any meaningful classification fares no better. Prisoners do not have a constitutionally recognized liberty interest in their security classification or placement. *Hewitt v. Helms*, 459 U.S. 460, 468, 102 S. Ct. 864 (1983); *see also Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1138 (D. Colo. 2010). Even so, Plaintiff stated in his deposition that he was rescreened when he requested it "once or twice," *see* Ex. A at 59-60, and offers no facts which might not suggest that these rescreenings were not "meaningful."

Plaintiff asserts the non-potable water issue as part of the segregation claim rather than a separate conditions of confinement claim. In his deposition, Plaintiff states that water from the sink would be turned off and "they would turn it back on during the day." *Id.* at 3:17-20. He also stated that his sink was not working somewhere between a week and a month, and that the issue was resolved at the end of that period. Ex. A at 23-24. On these "facts," this claim does not rise to the level of a constitutional claim, and Plaintiff offers no facts for the Court to find otherwise.

## II.     Grievances

For the first time in his response, Plaintiff asserts that complaints he made about the water being turned off in his cell went ignored by CCDC. Ex. 1 at 4 ("[n]ine times out of 10 you don't ever hear nothing back . . . [p]retty much they throw them away"). Ex. A at 24:17-19.

A plaintiff can withstand summary judgment by setting forth specific facts "from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Plaintiff offers no such facts. Instead, Plaintiff's full

14

testimony was that his grievance to the County Manager concerning the water issue was resolved in less than a month. Ex. A at 23:8-24-24:11. When asked to provide some examples of the other instances or dates regarding the other grievances, Plaintiff declined to "declare" any dates, claiming that he could not recall any of them. Ex. A at 23:1-10. Defendants are therefore entitled to summary judgment on Plaintiff's claim that his grievances were ignored.

### III. State Law Claims

Plaintiff's remaining state law claims of battery and aggravated assault against Defendant King and the County are asserted under the New Mexico Tort Claims Act. In light of the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over these claims. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998) (when all federal claims have been dismissed, the court . . . "usually should decline to exercise jurisdiction over any remaining state claims").

### IV. Conclusion

Defendants' Motion for Summary Judgment on Remaining Constitutional Claims on the Basis of Qualified Immunity **(Doc. 47)** is GRANTED in that:

(1) Defendants are entitled to summary judgment on Plaintiff's constitutional claims in Counts III and IV; and

(2) the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

A final Judgment shall issue separately.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE